EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into between Plaintiff, Annie Raines, on behalf of herself and others similarly situated, and Salo, Inc., d/b/a, Interim Healthcare and its related and affiliated entities, namely Salo, Inc., an Ohio corporation; Interim Healthcare of Akron/Canton, Inc., an Ohio corporation; Interim Healthcare of Cambridge, Inc., an Ohio corporation; Interim Healthcare of Cincinnati, Inc., an Ohio corporation; Interim Home Styles of Greater Cincinnati, Inc., an Ohio corporation; Interim Healthcare of SE Indiana, Inc., an Indiana corporation; Interim Healthcare of Columbus, Inc., an Ohio corporation; Interim Healthcare of Dayton, Inc., an Ohio corporation; Interim Healthcare of Northwestern, Ohio, Inc., an Ohio corporation; Interim Healthcare of Pittsburgh, Inc., a Pennsylvania corporation; Interim Healthcare of Ohio, Inc., an Ohio corporation; Interim Healthcare Hospice of Western Pennsylvania, Inc., a Pennsylvania corporation; Interim Healthcare Hospice of Ohio, Inc., an Ohio corporation; Indianapolis Home Care, Inc., an Indiana corporation; Interim Healthcare of SE Ohio, Inc., an Ohio corporation; Interim Healthcare of Marietta, Inc., an Ohio corporation; and Happy Paws Home Care, Inc., an Ohio corporation, ("Salo") to settle all state and federal wage and hour claims as further described herein.

Salo and Plaintiff (together, the "Settling Parties") agree to do all things and take all steps reasonably necessary and appropriate to obtain approval of this Agreement in consideration for: (a) payment by Salo of the consideration expressed in this Agreement subject to the terms, conditions and limitations of this Agreement; (b) the release and dismissal with prejudice of all claims, as set forth in this Agreement; and, (c) other valuable monetary and non-monetary consideration, as set forth in this Agreement. This Agreement is contingent upon approval by the supervising Court and is entered into voluntarily by the Settling Parties for settlement purposes only.

## I.      CONSENT TO COURT-FACILITATED NOTICE

A.      For settlement purposes only, the Settling Parties agree that Plaintiff and the "Potential Opt-In Plaintiffs" (as defined below) are similarly situated for purposes of 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") and consent to Court-facilitated notice of pendency of this action and proposed settlement thereof to the Potential Opt-in Plaintiffs. Potential Opt-in Plaintiffs shall include 2,500 Salo non-exempt employees including, but not limited to, home health aides during the period beginning March 2014 and ending December 31, 2017, who were denied overtime payments due to Salo's failure to include as hours worked the time the Potential Opt-Ins plaintiffs spent traveling to and from jobsites in excess of 40 hours in a workweek.  Within fifteen (15) days[1] of the supervising Court's approval of this settlement, Salo shall provide the Settlement Claims Administrator with the corresponding names of each Potential Opt-In Plaintiff as well as each such individual's last known mailing address.

B.      The Settling Parties shall cooperate and present to the supervising Court for its consideration in connection with the approval of the Agreement and Court-facilitated notice such information as may be reasonably requested by the Court for approving an FLSA settlement and facilitated notice.

---

[1] All time periods provided by this Agreement are in calendar days, not business days, unless otherwise stated.

## II.     SETTLEMENT APPROVAL PROCEDURE

Within ten (10) days of the execution of this Agreement, the Settling Parties shall file a Joint Motion for Order Approving Settlement of Collective Action and Authorizing Notice of Settlement and Opportunity to File Claim Form and Release ("Consent Motion") with the Settlement Agreement, agreed-to (proposed) Order on Consent Motion ("Approval Order"), and the Notice of Settlement, Claim Form and Release (including a postage-paid return envelope) (collectively, the "Notice Packet"), which is attached to this Agreement as **Exhibit A**, advising the Potential Opt-In Plaintiffs of the material terms and provisions of this settlement, including their estimated settlement share, the procedure for consenting to participate in this settlement by submitting a Claim Form and Release, and their rights with respect to this settlement. The Notice Packet must be sent out substantially in the form attached hereto as **Exhibit A**, subject to Court approval.

## III.     MODE, CALCULATION AND TIMING OF PAYMENT OF CLAIMS

### A.     Notice of Claims

1.     As set forth above, within fifteen (15) days of the supervising Court's approval of this settlement, Salo shall provide the Settlement Claims Administrator with the corresponding names of each Potential Opt-In Plaintiff as well as each such individual's employee identification number, if any, last known mailing address, Social Security number, dates of employment, and state(s) of employment during the period covered by the settlement. All information provided regarding the Potential Opt-in Plaintiffs will be treated by Plaintiff's Counsel and by the Settlement Claims Administrator as confidential, and the Claims Administrator will not communicate to Plaintiff's Counsel any personally identifying information (such as names or addresses) regarding any Potential Opt-In Plaintiff who has not yet opted into the settlement. Prior to the mailing of the Notice Packet to the Potential Opt-In Plaintiffs, the Settlement Claims Administrator shall make commercially reasonable efforts to find accurate addresses through the United States Post Office's National Change of Address database and shall mail the Notice Packet to any updated address obtained therefrom.

2.     Fifteen (15) days after Court approval of this Agreement and the Notice process described herein, the Settlement Claims Administrator shall mail, in one mailing, by U.S. Mail all Notice Packets to the Potential Opt-In Plaintiffs. Potential Opt-In Plaintiffs must submit a completed Claim Form and Release, by mail or facsimile, to the Settlement Claims Administrator on or before ninety (90) days after Court approval of this Agreement (the "Claim Bar Date"). If any Notice Packet is returned as undeliverable for a Potential Opt-In Plaintiff, the Claims Administrator shall promptly attempt to locate such Potential Opt-In Plaintiff up to two times through an electronic search using the Social Security number and/or former address of that person and, if a new address is obtained through the skip trace, shall promptly mail an additional Notice Packet to such person. The Claim Bar Date for Potential Opt-In Plaintiffs receiving such Notice Packets shall be 30 days after re-mailing or the original Claim Bar Date, whichever is later.

EXHIBIT 1

3.    Thirty (30) days prior to the Claim Bar Date, the Settlement Claims Administrator will distribute a reminder postcard by First Class U.S. Mail to any Potential Opt-In Plaintiffs who have not returned a Claim Form and Release.

4.    In the event that Plaintiff's Counsel or the Settlement Claims Administrator is contacted by a Potential Opt-In Plaintiff before the Claim Bar Date and the Potential Opt-In Plaintiff indicates that he or she did not receive the Notice Packet, the Settlement Claims Administrator shall mail an additional Notice Packet to the address provided by the Potential Opt-In Plaintiff.  The Claim Bar Date for Potential Opt-In Plaintiffs receiving such Notice Packets shall be 30 days after mailing or the original Claim Bar Date, whichever is later.

5.    In the event any Claim Form and Release is timely submitted but does not contain a signature or sufficient information to identify the Potential Opt-In Plaintiff, the Settlement Claims Administrator shall provide the Potential Opt-In Plaintiff with a letter requesting the information that was not provided (the "Cure Letter") and giving the Potential Opt-In Plaintiff the later of fifteen (15) calendar days or the applicable Claim Bar Date to respond. Any Potential Opt-In Plaintiff who fails to timely respond to a Cure Letter will not be considered a Qualified Claimant.

6.    The Potential Opt-In Plaintiffs who timely return completed and executed Claim Form and Releases will be considered "Qualified Claimants" entitled to receive their share of the Revised Gross Fund (as defined in III. F(2) paragraph below).

7.    In the event of any dispute over a Potential Opt-In Plaintiff's dates of employment, unpaid overtime and/or the late submission of any claims, the Settling Parties will meet and confer in good faith in an effort to resolve the dispute, and if the Settling Parties are unable to reach an agreement, the Settlement Claims Administrator shall decide the dispute, and its decision will be final.

8.    Within ten (10) calendar days after the Claim Bar Date, the Settlement Claims Administrator shall provide to Salo's Counsel and Plaintiff's Counsel a list, including names, address(es) and telephone number(s) (including cell phone numbers) of Qualified Claimants and shall provide electronic copies of all timely received and completed Claim Form and Releases. In addition, redacted copies of all timely received and completed Claim Form and Releases suitable for filing with the Court—i.e., removing addresses and other personally identifying information—shall be provided to Counsel for Salo so that Salo's Counsel may, at its option, file all Claim Form and Releases with the Court.

9.    At the conclusion of the settlement administration process, the Settlement Claims Administrator shall maintain an electronic copy of all Claim Form and Releases received by the Potential Opt-In Plaintiffs and shall provide the original and electronic Claim Form and Releases to Counsel for Salo.

**B.    Salo's Payment Obligations**

1.    **Payments to Plaintiff and the Gross Fund.** In consideration for the dismissal with prejudice of the lawsuit (the "Litigation") as well as the release of claims effected

3

by this Agreement and other good and valuable consideration, Salo shall pay One Million Five Hundred Thousand Dollars and Zero Cents ($1,500,000.00) to settle the Litigation for the benefit of Plaintiff and all Potential Opt-In Plaintiffs (the "Gross Fund"). Subject to the terms of this Agreement, the Gross Fund is inclusive of payment for: (1) the Portion of the Revised Gross Fund (as defined below) for Plaintiff and all Potential Opt-In Plaintiffs who become Qualified Claimants, or their respective authorized legal representatives; (2) all service payments sought from and approved by the Court; (3) all attorneys' fees, costs, and litigation expenses approved by the Court, including those in connection with securing Court approval of this Agreement, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Agreement; (4) the employee's *and* the employer's share of applicable federal, state and local taxes required to be withheld by Salo; and (5) costs and fees in excess of Twenty Five Thousand Dollars and Zero Cents ($25,000.00) incurred by the Settlement Claims Administrator. Other than Settlement Claim Administrator Fees not to exceed Twenty Five Thousand Dollars and Zero Cents ($25,000.00), the Gross Fund shall be all that Salo shall pay to Plaintiff and Potential Opt-In Plaintiffs to settle the Litigation and this figure assumes 100% of the Potential Opt-in Plaintiffs make valid and timely claims and become Qualified Claimants. The Gross Fund is exclusive of any and all interest or investment income accrued, which accrued interest/income and unclaimed funds after the payment of those amounts set forth above shall revert to Salo.

## C.    Timing of Payments by Salo

Within ten (10) days of Court approval of this Agreement, Salo agrees to deposit One Million Five Hundred Thousand Dollars and Zero Cents ($1,500,000.00) into the Qualified Settlement Fund described in paragraph III.E(1) below.

## D.    Settlement Claims Administration

**1.    Selection of Settlement Claims Administrator.** Within five (5) days of the execution of this Agreement, Plaintiff's Counsel shall select a firm to serve as Settlement Claims Administrator, subject to Salo's written approval, which approval shall not be unreasonably withheld.

**2.    Settlement Claims Administrator Responsibilities.** The Settlement Claims Administrator shall be responsible for: (a) preparing (subject to the parties' approval) the calculations of the individualized Settlement Payments (as defined below) and tax withholding amounts for Plaintiff and Potential Opt-In Plaintiffs, as applicable; (b) preparing, printing and disseminating to the Potential Opt-In Plaintiffs the Notice Packet and return envelope as well as the reminder postcard described in Paragraph III(A)(3) above; (c) copying counsel for all Settling Parties on material correspondence and promptly notifying all counsel for the Settling Parties of any material requests or communications made by any Settling Party or Potential Opt-In Plaintiff who receives Notice; (d) preparing, monitoring and maintaining a toll-free number with phone answerers until thirty (30) days after the mailing of checks to Qualified Claimants; (e) receiving and reviewing the Claim Form and Releases submitted by Potential Opt-In Plaintiffs to determine eligibility for payment; (f) calculating the final Settlement Payment for each Qualified Claimant in accordance with this Agreement (subject to the parties' approval); (g) mailing the service payments and settlement checks to Qualified Claimants; (h) wiring Plaintiff's Counsel's attorneys' fees, expenses, and costs in accordance with this Agreement and Order of the Court; (i)

paying all payroll tax obligations of Salo in accordance with this Agreement; (j) issuing W-2 and 1099 Forms for all amounts paid to Qualified Claimants; (k) ascertaining current address and addressee information for each Notice Packet returned as undeliverable pursuant to Paragraph III(A)(2); (l) responding to inquiries of the Potential Opt-In Plaintiffs regarding the terms of settlement and procedures for returning Claim Form and Releases; (m) referring to Plaintiff's Counsel all inquiries by the Potential Opt-In Plaintiffs about the amount of any Qualified Claimant's individual estimated settlement payment, if the Settlement Claims Administrator is unable to answer such inquiries; (n) responding to inquiries of Plaintiff's or Salo's Counsel; (o) promptly apprising counsel for the Settling Parties of the activities of the Settlement Claims Administrator; (p) maintaining adequate records of its activities, including the date of the mailing of the Notice Packets and receipt of Claim Form and Releases, returned mail and other communications and attempted written or electronic communications with Plaintiff and Potential Opt-In Plaintiffs; (q) confirming in writing to Plaintiff's Counsel and Salo's Counsel and the Court its completion of the administration of the settlement and retaining copies of all endorsed settlement checks; (r) timely responding to communications from the Settling Parties or their counsel; (s) maintaining the confidentiality of the Class List and obtaining appropriate insurance against a breach of such confidentiality; and (t) such other tasks as the Settling Parties mutually agree.

**3.** **Settlement Fund Fees and Expenses.**  All fees, expenses, and costs of the Settlement Claims Administrator related directly or indirectly to the Settlement Fund (as defined in paragraph III.(E)(1) below), including, but not limited to, all fees, expenses, and costs in connection with the Gross Fund and Settlement Fund (including, but not limited to, those related to notice, check cutting and mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to Qualified Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below) up to, and not to exceed Twenty Five Thousand Dollars and Zero Cents ($25,000.00) shall be paid by Salo.  If the fees, expenses, and costs of the Settlement Claims Administrator exceeds Twenty-Five Thousand Dollars and Zero Cents ($25,000.00), such costs shall be paid from the Gross Fund.

**4.** **Reporting by Settlement Claims Administrator.** Throughout the period of claims administration, the Settlement Claims Administrator will provide such reports to the Settling Parties upon request by either Settling Party, regarding the status of the mailing of the Notice Packets to the Potential Opt-In Plaintiffs, the claims administration process, the receipt of Claim Form and Releases, and distribution of the Settlement Checks or any other aspect of the claims administration process.

**E.** **Creation and Implementation of a Qualified Settlement Fund**

**1.** **Establishing the Qualified Settlement Fund.** Salo shall make the payment called for by Paragraph III(C) to an account titled Salo, Inc. Settlement Fund (the "Settlement Fund"), intended by the Settling Parties to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.* The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg.

Section 1.468B-1, *et seq.,* and shall be administered by the Settlement Claims Administrator, subject to the ultimate authority of the Court.

       **2.**     <u>**Administering the Settlement Fund.**</u> The Settlement Claims Administrator shall serve as Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund, including the handling of tax-related issues and payments. The Settlement Claims Administrator shall act in a manner necessary to qualify the Settlement Fund as a Qualified Settlement Fund and to maintain that qualification. The Settling Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Settling Parties agree to any relation-back election required to treat the Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

       **3.**     <u>**Tax Withholding and Reporting.**</u>

       a.    <u>Employment Taxes.</u> The Settling Parties recognize that the settlement payments to Qualified Claimants will be subject to applicable tax withholding and reporting. The Settlement Claims Administrator shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes from the wage portion of each Qualified Claimant's settlement payment. The applicable employer tax contributions associated with the wage portion of the settlement payments paid to Qualified Claimants, including, but not limited to, its own share, as the employer or former employer, of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A) will be paid out of the Gross Fund. Any such payroll taxes ordinarily borne by the employer shall be paid out of the Gross Fund.  The amounts designated as liquidated damages shall be reported to the IRS on Form 1099 and not subject to withholding.

       b.    <u>Fund Taxes.</u> All taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Salo or the Settlement Fund with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes") shall be paid out of the Settlement Fund. Further, Settlement Fund Taxes shall be treated as a cost of the administration of the Settlement Fund. The Settling Parties agree to cooperate with the Settlement Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section.

       **4.**     <u>**Other Payments and Indemnification.**</u> The Settlement Claims Administrator shall satisfy from the Settlement Fund: all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and any and all taxes, penalties and other obligations with respect to the payments or distributions not otherwise addressed in this Agreement. The Settlement Claims Administrator shall indemnify the Settling Parties for any penalty or interest arising out of an incorrect calculation or late deposit of the same.

5.   **Communication with Counsel.** Plaintiff's Counsel and Salo's Counsel are authorized to communicate directly with the Settlement Claims Administrator to expedite the settlement administration process.

F.   **Allocation of the Settlement Fund**

1.   **Revised Gross Fund.** The amount approved by the Court for Plaintiffs' Service Payments, attorneys' fees, expenses, and costs; and the expenses of the Settlement Claims Administrator shall be deducted from the Gross Fund to obtain a "Revised Gross Fund."

2.   **Allocation of Revised Gross Fund.** Qualified Claimants shall be paid their portion of the Revised Gross Fund pursuant to the following allocation formula:

a.   The Parties shall provide the Settlement Claims Administrator with a spreadsheet identifying each Potential Opt-in Plaintiff's total unpaid overtime hours and final rate of pay within the period identified in Paragraph I(A). Each Potential Opt-in Plaintiff's Maximum Potential Awards shall be calculated by determining their unpaid overtime (i.e., unpaid overtime hours x 1.5 final rate of pay);

b.   The Settlement Claims Administrator shall divide the Revised Gross Fund by the sum of all Maximum Potential Awards for all Potential Opt-in Plaintiffs to obtain the "Settlement Quotient;"

c.   Multiply each Potential Opt-in Plaintiff's Maximum Potential Award by the Settlement Quotient to determine each Potential Claimant's "Portion of the Revised Gross Fund;"

d.   Only Potential Opt-in Plaintiffs who become Qualified Claimants pursuant to Paragraph III(A)(6) shall be entitled to receive their Portion of the Revised Gross Fund.

3.   **Service Payment.** From the Gross Fund, Counsel for Plaintiff shall seek a Service Payment for Annie Raines of Ten Thousand Dollars and Zero Cents ($10,000.00) and a Service Payment for Rebecca Stevens for Five Thousand Dollars and Zero Cents ($5,000.00) for their involvement in commencing the claims represented in this litigation and in helping to bring about this collective outcome. The settlement is not conditioned upon the Court's approval of the requested Service Payments and any amount that is not approved by the Court for these Service Payments shall revert back to the Gross Fund for distribution as provided herein.

4.   **Attorneys' Fees and Costs Amounts.** Plaintiff's Counsel shall make an application to the Court for an award of Thirty-Three and One-Third Percent (33 1/3%) of the Gross Fund for attorneys' fees. In addition, Plaintiff's Counsel shall seek reimbursement of their reasonably incurred costs and expenses not to exceed $10,000 from the Gross Fund. Salo will not oppose the foregoing requests and application for attorneys' fees and costs by Plaintiff's Counsel. Payment of such attorneys' fees, expenses, and costs to Plaintiff's Counsel shall be made in accordance with this Agreement and shall constitute full satisfaction of any and all obligations by Salo to pay any person, attorney or law firm for attorneys' fees, expenses or costs incurred on

behalf of Plaintiff and Potential Opt-in Plaintiffs for the claims released by this Settlement. The Settlement Claims Administrator shall report the payment of these fees, expenses and costs to Plaintiff's Counsel on an IRS Form 1099. The settlement is not conditioned upon the Court's approval of the requested attorneys' fees and costs, and any amount that is not approved by the Court for these payments shall revert back to the Gross Fund for distribution as provided herein. There shall be no other payment to or liability for legal fees or other payments to any attorney or other person for the claims released by this Settlement other than as set forth herein.

        **5.**    **Tax Treatment.** The Settlement Claims Administrator shall allocate fifty percent (50%) of the total paid to each Qualified Claimant to wages (to be reported on an Internal Revenue Service ("IRS") Form W-2) and fifty percent (50%) to non-wage compensation (to be reported on an IRS Form 1099). The Settlement Claims Administrator shall be responsible for withholding and timely remitting and reporting all taxes to the appropriate taxing authorities. Payments treated as W-2 wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages, statutory penalties and interest shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs shall be made without withholding. Plaintiff's Counsel will receive a Form 1099 for this payment. The tax treatment of and withholding from any Service Payments made pursuant to Paragraph III(F)(3) shall be determined by the Settlement Claims Administrator.

## G.    **Payments from the Qualified Settlement Fund**

        **1.**    **Service Awards, Fees and Costs**. Within fifteen (15) business days of the Court's Order Approving this Agreement, the Settlement Claims Administrator shall pay, out of the Gross Fund, to (1) Plaintiffs such amount of service payments as have been approved and ordered by the Court, not to exceed a total of $15,000, and (2) Plaintiff's Counsel such amount of attorneys' fees and costs as has been approved and ordered by the Court.

        **2.**    **Timing of Payments to Qualified Claimants.** Within twenty-one (21) days after the deadline for Consents to be returned to the Settlement Claims Administrator, the Settlement Claims Administrator will transmit all payments to Qualified Claimants by first-class U.S. Mail to the last known address for each Qualified Claimant, or such other address provided by the Qualified Claimant to the Settlement Claims Administrator.

        **3.**    **No Additional Benefits or Compensation.** It is expressly understood and agreed that the receipt of any payment under this Agreement will not entitle any Qualified Claimant to any compensation or benefits under any of Salo's or Released Parties' bonus or other compensation or benefit plans or agreements. Nor will the receipt of such payments entitle any Qualified Claimant to any retirement, 401K benefits or matching benefits or deferred compensation benefits, or increases in any benefits or payments. The Qualified Claimants are not entitled to any new or additional compensation or benefits as a result of having received payments pursuant to this Agreement (notwithstanding any contrary language or agreement in any benefit or compensation plan document).

      **4.**     <u>**Tax Advice.**</u> Plaintiff, on behalf of herself and Potential Opt-in Plaintiffs, acknowledges and agrees that she has not relied upon any advice from Salo as to the taxability of the payments received pursuant to this Agreement or in any other respect whatsoever.

      **5.**     <u>**Negotiation of Settlement Checks.**</u> Qualified Claimants will have ninety (90) days after the date on the settlement checks (the "Check Issuance Date") in which to negotiate the checks. If any Qualified Claimant does not negotiate his or her settlement check within 90 days after the Check Issuance Date, the check will be void, and no such void checks will be reissued. The Settlement Claims Administrator will advise Plaintiff's Counsel of any uncashed checks fourteen (14) days prior to the 90 day deadline and will provide contact information for any Qualified Claimants who have not cashed their checks at that time.

      Any funds remaining in the Qualified Settlement Fund after payment to: (1) all Qualified Claimants who timely negotiate their settlement checks; (2) all service payments, attorneys' fees, costs, and litigation expenses approved by the Court; (3) all costs incurred by the Settlement Claims Administrator and all costs in connection with the Settlement Fund including, but not limited to, those related to notice, check cutting and mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to Qualified Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below); and (4) applicable federal, state and local income taxes, and all federal and state unemployment taxes required to be withheld shall be returned to Salo.

## IV.    <u>RELEASE BY QUALIFIED CLAIMANTS</u>

      **A.**     <u>**Release.**</u> Conditioned upon the Court's entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, Plaintiff does hereby agree to dismiss the captioned case with prejudice and all Qualified Claimants, including Potential Opt-In Plaintiffs, who execute a Claim Form and Release shall release Salo and any of its subsidiaries, affiliates, business units, members, shareholders, and their predecessors and successors, officers, directors, agents, employees and assigns (collectively, the "Released Parties") from any and all wage claims pled in the Complaint or that could have been pled under the facts alleged in the Complaint under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and any state and/or local wage-and-hour laws through the date of full execution of this Agreement, as set forth in the Claim Form and Release. (The claims being released are referred to in this Agreement as "Released Claims.").

## V.    <u>NOTICES</u>

      All notices, requests, demands and other communications required or permitted to be given to either party pursuant to this Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses as set forth herein:

EXHIBIT 1

Counsel for Plaintiff:

                                      Shannon M. Draher
                                        Hans A. Nilges
                                        Nilges Draher LLC
                                        7266 Portage Street NW
                                        Suite D
                                        Massillon, OH 44646

Counsel for Defendant:

                                        Douglas M. Kennedy
                                        Paul L. Jackson
                                        Roetzel & Andress, LPA
                                        41 South High Street
                                        Huntington Center, 21st Floor
                                        Columbus, OH  43215

Defendant:

                                        Thomas J. DiMarco
                                        President/CEO
                                        Salo, Inc.
                                        960 Checkrein Avenue
                                        Columbus, OH 43229

## VI.    <u>REPRESENTATION BY COUNSEL</u>

All of the Settling Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement and that this Agreement has been executed with the advice of counsel.

## VII.    <u>NO ADMISSION OF LIABILITY</u>

Salo enters into this Agreement to avoid further expense and disruption to its business. The Settling Parties acknowledge and agree that liability for the actions that are the subject matter of this Agreement is disputed by Salo. This Agreement and the settlement are a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Settling Parties to this Agreement. The Settling Parties further acknowledge and agree that this Agreement and the settlement shall not be used to suggest an admission of liability in any dispute the Settling Parties may have now or in the future with respect to any person or entity. Neither this Agreement nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Agreement.

## VIII.    <u>MODIFICATION OF AGREEMENT</u>

This Agreement may not be modified or amended except in writing, signed by the affected Settling Parties or the respective counsel of record for the Settling Parties and as approved by the Court.

## IX.  CONSTRUCTION AND INTERPRETATION

**A.    Entire Agreement.** This Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter contained herein. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof. Plaintiff and Salo participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, neither Plaintiff nor Salo may claim that any ambiguity in this Agreement should be construed against the other.

**B.    No Reliance on Representations or Extrinsic Evidence.** Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary or contradict its terms. In entering into this Agreement, the Settling Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence.

**C.    Controlling Law.** This Agreement shall be subject to, governed by, construed, enforced and administered in accordance with the laws of the State of Ohio, and shall be subject to the continuing jurisdiction of the United States District Court for the Southern District of Ohio, Eastern Division.

**D.    No Assignment.** Plaintiff's Counsel and Plaintiff, on behalf of herself and Potential Opt-in Plaintiffs, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**E.    Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, except the Release as set forth in Section IV and the Claim Form and Release, the remaining portions of this Agreement will remain in full force and effect to the extent that the effect of the Agreement remains materially the same and the obligations of the Settling Parties remain materially the same.

## X.    COUNTERPARTS

This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

## XI.   BINDING EFFECT

This Agreement is binding upon and shall inure to the benefit of the Settling Parties to this Agreement. Without limiting the foregoing, this Agreement specifically shall inure to the benefit of Salo as well as its present and former owners, stockholders, predecessors, successors, joint

EXHIBIT I

ventures, assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliates, affiliated divisions and entities, and all persons acting by, through, under or in concert with any of them. Also without limiting the foregoing, this Agreement shall be binding upon the spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors and offspring of all Qualified Claimants.

## XII.  ATTORNEYS' FEES, COSTS AND EXPENSES

Except as otherwise specifically provided herein, the Settling Parties and all Potential Opt-in Plaintiffs shall bear responsibility for their own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them or arising out of this litigation and shall not seek reimbursement thereof from any party to this Agreement. However, in the event of any dispute to enforce the terms of this Agreement, the prevailing party shall be entitled to an award of their reasonable attorneys' fees and costs from the non-prevailing party.

## XV.  AUTHORITY OF COUNSEL

**A.  Facsimile and Email Signatures.** Any Settling Party may execute this Agreement by signing or by causing its counsel to sign on the designated signature block below and transmitting that signature page *via* facsimile or email to counsel for the other Settling Party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Settling Party whose counsel transmits the signature page by facsimile or email.

**B.  Voluntary Signature.** All Settling Parties agree that they have signed this Agreement, or authorized their counsel to sign this Agreement on their behalf, knowingly, voluntarily, with full knowledge of its significance, and without coercion.

**C.  Warranty of Counsel.** Plaintiff's Counsel warrant and represent that they are expressly authorized by Plaintiff to take all appropriate action required or permitted to be taken pursuant to this Agreement in order to effectuate its terms. Counsel for Salo warrant and represent that they are authorized to take all appropriate action required or permitted to be taken by Salo pursuant to this Agreement in order to effectuate its terms.

## XVI.  CONTINUING JURISDICTION

The Parties hereto agree to move for the United States District Court for the Southern District of Ohio, Eastern Division to retain continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement; to supervise the administration and distribution of the resulting settlement funds; and to hear and adjudicate any dispute or litigation arising from or related to this Agreement or the issues of law and facts asserted in the collective action litigation.

The Settling Parties (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the foregoing

terms and conditions of the Agreement, as long as such cooperation does not delay the administration or approval of the Agreement.

Dated: February__, 2018    SALO, INC.

                        By:    _____

                        Its:    _____

Dated: February ___, 2018

                     _____
                     ANNIE RAINES

EXHIBIT I

# EXHIBIT A

### NOTICE OF SETTLEMENT OF COLLECTIVE ACTION LAWSUIT

**You are receiving this notice because you are a member of a collective action and eligible to participate in a settlement. A court approved this notice. This is not a solicitation from a lawyer.**

**If you work or worked for Salo, Inc., d/b/a Interim Healthcare as a non-exempt employee and spent time traveling to and from jobsites during the workday, you may be entitled to a payment from a collective action settlement if you complete and return the enclosed form.**

A current home health aide of Salo, Inc. ("Salo") has filed a lawsuit alleging that Salo failed to pay her and other non-exempt employees overtime associated with time spent traveling over 40 hours during a normal workweek. The Parties have entered into this settlement solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expense. No Court has ruled on the merits of the Plaintiff's claims, and no party has prevailed in this action.

Under the allocation formula created by the settlement, you are estimated to receive approximately $_____, subject to deductions for applicable taxes. The final amount to which you may be entitled may be higher or lower than the estimated amount.

**Your legal rights may be affected, and you have a choice to make now:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RETURN THE CONSENT FORM** | By returning a properly completed Claim Form and Release you agree to participate in the settlement, receive a monetary settlement payment, and release your claims. |
| **DO NOT RETURN THE CONSENT FORM** | If you do not wish to participate in or be bound by the settlement, you should not return the Claim Form and Release. If you do not timely return a properly completed Claim Form and Release postmarked by [date], you will not receive a settlement payment, and you will not release any claims. |

### BASIC INFORMATION

### 1. Why did I get this notice?

You have received this notice because Salo's records show that you currently work or previously worked as a non-exempt employee for Salo during the period of March 2014 to December 31, 2017, the time period covered by the settlement, and that you are owed overtime for time spent traveling during a normal workday.

EXHIBIT 1

The Court ordered that you be sent this notice because you have a right to know about the settlement of this collective action lawsuit that affects your rights. This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Court overseeing these lawsuit is the United States District Court for the Southern District of Ohio, Eastern Division. The lawsuit is known as *Annie Raines v. Salo, Inc., d/b/a Interim Healthcare*, Case No. 2:17-cv-00209 (S.D. Ohio). The person who filed the lawsuit is called the "Plaintiff." Salo is referred to as the "Defendant."

## 2. What is the lawsuit about?

This lawsuit is about whether Salo failed to pay overtime wages for time that its home health aides spent traveling to and from client residences during their normal workdays. The Court has not made any ruling on the merits of the claims.

## 3. What is a collective action?

In a "Collective Action," one or more people called "Named Plaintiffs" sue on behalf of people who have similar claims. When other employees who have similar claims opt into the Collective Action, they become "Collective Members." You may opt into the Collective Action and participate in the settlement of the lawsuit by signing and returning the enclosed Claim Form and Release. A settlement check will be mailed to you if and when all appeals have been exhausted.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiff or Salo and neither side prevailed. The Parties agreed to this settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expense. That way, they avoid the cost of a trial, and the people affected will get compensation.

WHO IS IN THE SETTLEMENT

## 5. How do I know if I will be included in the settlement?

You will receive a settlement check if you are or were a non-exempt employee who was not paid all of his/her overtime as a result of Salo's travel time during the working day for the period of March 3, 2013 through December 31, 2017, **and** you properly complete, sign, and return the enclosed Claim Form and Release by [date 90 days from mailing of Notice].

16

EXHIBIT 1

| 6. I'm not sure if I want to be included. |
|---|

If you are still not sure whether you would like to be included, you can ask for free help. You can contact the attorneys for the Plaintiff as follows:

Shannon Draher

Nilges Draher LLC

7266 Portage Street NW

Suite D

Massillon, OH 44646

(330) 470-4428

THE SETTLEMENT BENEFITS – WHAT YOU GET

| 7.  What does the settlement provide? |
|---|

Salo has agreed to pay $1,500,000 to be utilized to pay monies to current and former non-exempt employees who are covered by the settlement.  The settlement amount will be used to pay settlement payments, Court-approved attorneys' fees and costs, Court-approved service payments of a combined total of $15,000 ($10,000 to Annie Raines and $5,000 for Rebecca Stevens), and payroll and other applicable taxes.

The settlement funds for Collective Members will be divided proportionately among current and former non-exempt employees who are covered by the settlement based on each employee's unpaid overtime during the period covered by the settlement.  Should such employees not participate, any remainder shall revert to Salo. **Settlement checks that are not cashed within 90 days will be null and void.**

| 8.  How much will my payment be and how was it calculated? |
|---|

Based on the formula that has been approved by the Court, you are estimated to receive approximately $_____, half of which is subject to deductions for applicable taxes and withholdings like any other paycheck, and for which you will receive a W-2; and half of which will be reported on an IRS Form 1099.  The final amount to which you may be entitled may be higher or lower than the estimated amount.  The allocation formula takes into account your unpaid overtime as a result of Salo's failure to pay travel time during the period covered by the settlement.  The Settlement Agreement contains the exact allocation formula.  You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 14 below.

HOW YOU GET A PAYMENT

| 9.  How can I get my payment? |
|---|

To get your payment, you must fully complete the enclosed Claim Form and Release and mail it to the Claims Administrator in the enclosed envelope postmarked no later than [date].  You may also e-mail or fax the Claim Form and Release to the Settlement Claims Administrator, so that it is received no later than [date].  The Settlement Claims Administrator's complete contact information is:

[Claims Administrator to insert]

If you return a properly completed Claim Form and Release by the deadline, you will be sent a settlement check after all appeals have been exhausted.

## 10. When will I get my payment?

It is possible that there will be an appeal of the Court's order approving the settlement. It is always uncertain whether any appeals can be resolved, and resolving them can take time, perhaps more than a year.

Provided that there are no appeals, you will be sent a check within approximately two months of submitting your Claim Form and Release. Please be patient.

## 11. What am I giving up if I sign the Claim Form And Release to get a payment?

Once you agree to and return the Claim Form And Release, you cannot sue, continue to sue, or be a party in any other lawsuit against Salo relating to the claims at issue in this case during the time period covered by the Settlement. It also means that all of the Court's orders will apply to you and legally bind you. If you do not agree to and return Claim Form and Release by the deadline, you will not participate in the settlement, you will not receive any payment the settlement, you will not release any claims, and you will not be bound by the Court's orders.

### THE LAWYERS REPRESENTING YOU

## 12. Do I have a lawyer in this case?

Upon signing and returning the Claim Form and Release, you will be consenting to join this case, you will designate the law firm of Nilges Draher LLC to represent you. These lawyers are called "Plaintiff's Counsel." You will not be charged for these lawyers. You can find more information about Plaintiff's Counsel at http://ohlaborlaw.com/.

You do not need to retain your own attorney in order to participate in the settlement. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 13. How will the lawyers be paid?

The Court has approved payment of $_____ for attorneys' fees, plus $___ in attorneys' actual out-of-pocket costs. These fees will compensate Plaintiff's Counsel for investigating the facts, litigating the case, negotiating the settlement, and Plaintiff's Counsel's out-of-pocket costs.

### GETTING MORE INFORMATION

## 14. How do I get more information?

If you have other questions about the settlement, you can contact Plaintiff's Counsel at the address and/or telephone number below.

EXHIBIT I

Shannon M. Draher<br>
Hans A. Nilges<br>
Nilges Draher LLC<br>
7266 Portage Street NW<br>
Suite D<br>
Massillon, OH 44646<br>
(330) 470-4428

DATED: _____, 2018

EXHIBIT 1

***Raines v. Salo, Inc., d/b/a Interim Healthcare***
2:17-cv-00209 (S.D. Ohio)

Claims Administrator

[NAME]
[ADDRESS]
[ADDRESS]
[PHONE NUMBER]

## CLAIM FORM AND RELEASE INSTRUCTIONS

**In order to receive any portion of the settlement funds described in the Notice of Settlement ("Notice"), you must sign, date, and return this Claim Form and Release to the Settlement Claims Administrator postmarked by the _____2018 Bar Date**

### CHANGES OF ADDRESS

It is **your responsibility** to keep a current address on file with the Settlement Claims Administrator.  Please make sure to notify the Settlement Claims Administrator of any change of address.

*Annie Raines v. Salo, Inc., d/b/a Interim Healthcare*

Settlement Claims Administrator
[Name]
[Address]
[Address]
[Phone]

***[DATE]***.

EXHIBIT 1

<u>**CLAIM FORM AND RELEASE**</u>

***T**HIS **F**ORM MUST BE POST-MARKED OR OTHERWISE SUBMITTED TO THE **S**ETTLEMENT **C**LAIMS*
***A**DMINISTRATOR NO LATER THAN* <mark>**[D**ATE**]**</mark>.

## I.   CONSENT TO JOIN

I understand that this lawsuit is being brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, et seq. ("FLSA") and related state laws.  Pursuant to 29 U.S.C. § 216(b), I hereby consent and agree to join the case of *Annie Raines v. Salo, Inc., d/b/a Interim Healthcare,* United States District Court for the Southern District of Ohio, Case No. 2:17-cv-00209.  I consent and agree to be bound by any action by the Court.  I further agree that the Plaintiff in the Litigation shall act as my agent and make all decisions on my behalf concerning the Litigation, including the settlement thereof.

I hereby designate the law firm of Nilges Draher LLC to represent me in this action.

## II.   RELEASE

My signature below constitutes a full and complete release and discharge of Salo, Inc. _____ ("Salo") and its present and former owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, insurers, attorneys, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and all persons acting by, through, under or in concert with any of them ("Salo Releasees") by me and by my respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, from any and all wage and hour claims, demands, rights, liabilities, expenses, and losses of any kind, that I have, had, or might have had against Salo based on any act or omission that occurred at any time up to and including **[Date Agreement is Signed]**, related to any of the facts or claims alleged in this Litigation or that could have been alleged based on the facts at issue in the Litigation, even if presently unknown and/or un-asserted, including but not limited to:  The Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et. seq.* and the wage and hour laws and regulations of any state in which (1) I worked for Salo or (2) resided in while employed by Salo any claims that could be asserted against the Salo Releasees under state, federal, local and/or common law, relating to the failure to pay wages, back wages, overtime, minimum wages, interest on such claims, and attorneys' fees, expenses and costs related to such claims in exchange for my proportionate share of the settlement.


_____         _____
Full Legal Name (print)                                  Signature


_____         _____
Maiden or other names worked under*         Street Address*

                                                                 _____
                                                                 City, State and Zip Code*

EXHIBIT 1

_____

E-mail Address*


_____        _____

Cell phone*                                                      Home Telephone Number*


*This information will be redacted and will not be filed in the public record.  This information will
be used solely for Plaintiff's Counsel to communicate with you.


12356418 _1 130680.0025